VEREDA, LTDA., Plaintiff–Appellee,

v.

UNITED STATES, Defendant–Appellant.

No. 00–5099.

United States Court of Appeals, Federal Circuit.

Nov. 26, 2001.

Mark L. Whitaker, Howrey Simon Arnold & White, LLP, of Washington, DC, argued for plaintiff-appellee.

Armando O. Bonilla, Trial Attorney, Asset Forfeiture and Money Laundering Section, Criminal Division, Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General, and David M. Cohen, Director, Civil Division. Of counsel on the brief were John Hieronymus, Forfeiture Counsel, and Susan C. Holiman, Senior Attorney, Department of Justice, Drug Enforcement Administration, Office of Chief Counsel, Asset Forfeiture Section, of Arlington, Virginia.

Before CLEVENGER, SCHALL, and DYK, Circuit Judges.

SCHALL, Circuit Judge.

In this case we are called upon to review an order, *Vereda, Ltda. v. United States*, 41 Fed.Cl. 495 (1998) ("*Vereda I*"), vacated in-part, 46 Fed.Cl. 12 (1999) ("*Vereda*

*II* "), that has been certified for our interlocutory review by the United States Court of Federal Claims pursuant to 28 U.S.C. § 1292(d)(2). *Vereda, Ltda. v. United States,* 46 Fed.Cl. 569, 571 (2000) (*"Vereda III "*). The controlling question of law in the certified order is:

> [w]hether a mortgagee may assert a viable Fifth Amendment taking claim in the United States Court of Federal Claims following the government's *in rem* administrative forfeiture of the property securing the mortgage after proceedings in the United States District Court.

*Vereda III,* 46 Fed.Cl. at 570.

The Court of Federal Claims certified the order at the request of the United States after it denied the motion of the United States to dismiss Vereda, Ltda.'s ("Vereda's") taking claim under the Fifth Amendment to the United States Constitution.[1] Vereda's claim arose from the Drug Enforcement Administration's ("DEA's") seizure and *in rem* administrative forfeiture of an aircraft in which Vereda had a mortgage interest. In denying the government's motion to dismiss, the Court of Federal Claims held that our decision in *Shelden v. United States,* 7 F.3d 1022 (Fed.Cir.1993), allows an innocent mortgagee, which Vereda alleges it is, to assert a Fifth Amendment taking claim in the Court of Federal Claims following an administrative forfeiture of the property that is the subject of the mortgage. *Vereda I,* 41 Fed.Cl. at 507; *Vereda II,* 46 Fed.Cl. at 18–19. Following its decision, the court certified its order in *Vereda I,* as revised by *Vereda II,* for interlocutory appeal, amending the order to include the question of law that is before us for review. *Vereda*

*III,* 46 Fed.Cl. at 570–71. Subsequently, in accordance with 28 U.S.C. § 1292(d)(2), we granted the government's unopposed petition for permission to appeal the certified order. *Vereda, Ltda. v. United States,* 250 F.3d 759 (Fed.Cir.2000) (unpublished table decision) (*"Vereda IV"*).

For the reasons set forth below, we answer the certified question in the negative. Accordingly, we reverse the decision of the Court of Federal Claims denying the government's motion to dismiss Vereda's taking claim. The case is remanded to the Court of Federal Claims with instructions to enter judgment dismissing Vereda's complaint.

## BACKGROUND

### I.

Vereda is a limited partnership. It is registered and does business in Colombia as a broker and dealer in small aircraft and aircraft parts. *Vereda I,* 41 Fed.Cl. at 496. In early 1993, Vereda agreed with Aeroexpreso de la Frontera ("Aeroexpreso"), another Colombian limited partnership, to locate and deliver to Aeroexpreso a twin-engine turboprop airplane. *Id.* In due course, Vereda engaged Export–Air Corporation ("Export–Air"), a company based in Miami, Florida, to locate such an airplane in the United States and to export it to Aeroexpreso. *Id.*

In June of 1993, Export–Air located a 1978 Rockwell Commander aircraft (the "airplane") that was being offered for sale in North Carolina for $460,000. *Id.* On June 30, 1993, after obtaining Vereda's approval, Export–Air entered into a contract for the purchase of the airplane.

---

1. The Fifth Amendment provides in relevant part as follows: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V, cl. 4.

Under the contract, Export–Air was to make an initial deposit of $50,000 toward the purchase price of the airplane. *Id.* The balance of the purchase price was to be paid by Export–Air to the seller within thirty days. Export–Air asked the seller to deliver the airplane to Fort Lauderdale, Florida, on August 6, 1993. *Id.* Export–Air obtained permission from the Colombian government to import the airplane into Colombia. *Id.*

Aeroexpreso agreed to pay Vereda a total of $544,500 for the airplane. *Id.* Under its agreement with Vereda, Aeroexpreso was required to pay Export–Air $50,000 and Vereda $222,250 before Aeroexpreso received the airplane in Bogota, Columbia. *Id.* Vereda accepted a mortgage on the airplane from Aeroexpreso in order to secure payment of the remainder of the purchase price of the airplane. *Id.* By August 3, 1993, Vereda had paid Export–Air a total of $496,000. *Id.* On August 4, 1993, Export–Air paid the seller the balance owed on the purchase of the airplane. *Id.*

DEA seized the airplane on August 6, 1993, when it arrived in Fort Lauderdale. *Id.* at 496–97. The seizure was based on a warrant alleging probable cause to believe that the airplane was intended to be used to facilitate the possession and transportation of cocaine and that the airplane had been purchased with the proceeds of illegal drug transactions. *Id.* at 497. The warrant alleged that the ultimate purchaser and user of the airplane was not Aeroexpreso, but Avia 2000, a Colombian corporation allegedly owned by a member of the Medellin cocaine cartel. *Id.*

## II.

Certain items that are subject to forfeiture are described in 21 U.S.C. § 881(a), which is part of the Controlled Substances Act, 21 U.S.C. §§ 801–971 (1999).[2] Relevant to this case are 21 U.S.C. §§ 881(a)(4) and 881(a)(6). They provide in pertinent part as follows:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them:
>
> .   .   .   .   .
>
> (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances]. . . .
>
> .   .   .   .   .
>
> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance . . . . in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter. . . .

21 U.S.C. §§ 881(a)(4) and 881(a)(6).

Section 881(d) provides that seizures and forfeitures under § 881 shall be conducted pursuant to the laws governing the seizure and forfeiture of property by the United States Customs Service in title 19 of the United States Code, insofar as they

---

**2.** The provisions of the Controlled Substances Act and the applicable Customs statutes, *see infra,* that are relevant to this appeal are largely unchanged from the period 1993–1994, when the seizure and forfeiture at issue in this case took place. Accordingly, unless otherwise indicated, we refer to these provisions in the present tense, and all references are to the 1999 edition of the United States Code.

are applicable and not inconsistent with the Controlled Substances Act.

Pursuant to the applicable customs statute, 19 U.S.C. § 1607(a), if an item seized under 21 U.S.C. § 881 is valued at less than $500,000, the seizing agency is required to publish notice of the seizure and impending forfeiture. 19 U.S.C. § 1607(a). The forfeiture proceeding is thereafter halted if, within twenty days of the first publication of notice of the seizure, any person submits a claim of ownership with respect to the item and a cost bond. 19 U.S.C. § 1608. The seizing agency then turns the matter over to the United States Attorney, who must institute judicial condemnation proceedings in federal district court. *Id.; see also Litzenberger v. United States*, 89 F.3d 818, 820 (Fed.Cir.1996).[3] During the judicial proceedings, the government bears the burden of establishing probable cause for the forfeiture. 19 U.S.C. § 1615. Once probable cause is established, the claimant must prove by a preponderance of the evidence that the property does not meet the criteria under which it was allegedly forfeited, recited in the relevant part of 21 U.S.C. § 881(a). 19 U.S.C. § 1615; *United States v. One (1) 1979 Cadillac Coupe De Ville VIN 6D4799266999*, 833 F.2d 994, 996 (Fed.Cir. 1987).

If no claim of ownership is filed within twenty days of the publication of notice of the seizure, the seized item is declared forfeited. 19 U.S.C. § 1609(a). Section 1609(b) states that "[a] declaration of forfeiture under this section shall have the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States." Title then vests, as of the date of "the act for which the forfeiture was incurred," in the United States. 19 U.S.C. § 1609(b). Once a forfeiture is declared under § 1609, a claimant may seek remission of the forfeiture from the agency. 19 U.S.C. § 1613(a). However, remission "is purely a matter of administrative grace." *Litzenberger*, 89 F.3d at 820.[4]

## III.

On September 15, 22, and 29, 1993, DEA published notice of the airplane's seizure and impending forfeiture in *USA Today*. On October 14, 1993, Vereda requested that it receive notice of the seizure. Responding to the request, DEA sent Vereda information regarding the seizure and impending forfeiture and granted Vereda an additional twenty days from Vereda's receipt of the information to file a claim of ownership. On October 28, 1993, Aer-

**3.** If the item seized is worth more than $500,000, the forfeiture action is prosecuted from the outset by the appropriate United States Attorney in district court. 19 U.S.C. § 1610.

**4.** On April 11, 2000, Congress passed the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub.L. No. 106–185, 114 Stat. 202, in an effort to address due process concerns associated with federal civil forfeitures. H.R.Rep. No. 106–192, at 4–5 (1999). *See* Pub.L. No. 106–185 § 2, 114 Stat. at 202, 210 (stating that CAFRA § 2 is intended to apply to proceedings arising from "any provision of Federal law providing for the forfeiture of

property other than as a sentence imposed upon conviction of a criminal offense"). CAFRA is codified principally at 18 U.S.C. § 983.

CAFRA is not applicable to this case, as it was not enacted by signature until April 25, 2000, and by its terms, CAFRA only applies to "any forfeiture proceeding commenced on or after the date that is 120 days after the date of the enactment of this Act." Pub.L. No. 106–185 § 21, 114 Stat. at 225. The commencement of forfeiture proceedings in this case occurred in 1993.

oexpreso filed a claim of ownership of the airplane and a cost bond in the amount of $5,000. DEA rejected the claim as untimely on November 16, 1993, noting that the deadline for Aeroexpresso to file a claim of ownership had passed on October 5, 1993, pursuant to 19 U.S.C. § 1608, twenty days after DEA first published notice of the seizure of the airplane in *USA Today*. Vereda did not file a claim of ownership with respect to the airplane.

On November 19, 1993, DEA declared the airplane administratively forfeited to the government pursuant to 19 U.S.C. § 1609. Both Aeroexpreso and Vereda submitted petitions for remission of the forfeiture on December 3, 1993, pursuant to 19 U.S.C. § 1613(a). On January 27, 1994, Export–Air filed a claim of ownership with respect to the airplane and a cost bond with DEA. DEA denied Export–Air's claim as untimely on March 10, 1994. DEA thereafter denied Aeroexpreso's and Vereda's petitions for remission on April 19 and May 12, 1995, respectively. Aeroexpreso's and Vereda's subsequent requests for reconsideration were denied.

On February 24, 1994, while DEA was considering Aeroexpreso's and Vereda's petitions for remission and Export–Air's claim of ownership, Aeroexpreso filed suit in the United States District Court for the Southern District of Florida, seeking the return of the airplane and damages based on the government's alleged violation of Aeroexpreso's constitutional due process rights during the administrative forfeiture proceeding. The district court granted the government's motion to dismiss the suit for lack of jurisdiction. The court held that because Aeroexpreso had notice of the seizure and impending forfeiture, the court could not exercise its equitable jurisdiction over the administrative forfeiture of the airplane. *Aeroexpreso de la Frontera v. United States*, No. 94–0365, slip op. at 7–12 (S.D.Fla. July 28, 1994). The court stated that it was "uncontroverted that a certified copy of the notice was sent by certified mail [to Aeroexpreso]," and that there had thus "been no 'callous disregard for the constitutional rights' of" Aeroexpreso. *Id.* at 10–11 (citation omitted). Aeroexpreso appealed, and the dismissal was summarily affirmed by the United States Court of Appeals for the Eleventh Circuit. *Aeroexpreso De La Frontera v. United States*, 65 F.3d 182 (11th Cir.1995) (unpublished table decision).

On December 5, 1994, Export–Air filed its own action in the district court. It claimed that it had not received sufficient notice of the seizure and proposed forfeiture under 19 U.S.C. § 1607(a). It argued that, on account of this lack of notice, the court should review the merits of the forfeiture. Accordingly, Export–Air asked the district court to invalidate the forfeiture of the airplane. The district court granted the government's motion for summary judgment. *Export–Air Corp. v. United States*, No. 94–2065, slip op. at 5–8 (S.D.Fla. Feb. 12, 1995). The court determined that Export–Air had received adequate notice of the seizure and proposed forfeiture but had failed to timely contest the forfeiture. *Id.* at 7–8. The court therefore declined to exercise equitable jurisdiction over Export–Air's claims. *Id.* Export–Air did not appeal the district court's decision.

## IV.

On May 6, 1996, Vereda filed a complaint in the Court of Federal Claims. Vereda's complaint sought monetary damages under the theories that DEA's seizure and administrative forfeiture of the

airplane constituted an illegal exaction, a compensable taking under the Fifth Amendment, and an excessive fine under the Eighth Amendment to the Constitution.[5] The government moved to dismiss all of Vereda's claims for lack of jurisdiction. The Court of Federal Claims granted the motion in-part and denied it in-part by dismissing one of Vereda's claims. *Vereda I*, 41 Fed.Cl. at 508. The only claim the court dismissed was Vereda's excessive fine claim. It did so on the ground that the Eighth Amendment is not a money-mandating provision and that, consequently, the court could not exercise jurisdiction over the claim under the Tucker Act, 28 U.S.C. § 1491. *Id.* at 507–08.

The government sought rehearing on its motion to dismiss Vereda's illegal exaction claim and its taking claim. After considering the motion, the Court of Federal Claims revised its decision in *Vereda I*, dismissing Vereda's illegal exaction claim but affirming its earlier decision to allow Vereda to proceed with its taking claim. *Vereda II*, 46 Fed.Cl. at 19. The court noted that the viability of Vereda's illegal exaction claim rested on whether the government had provided Vereda with sufficient notice of the airplane's seizure. *Id.* at 14.[6] The court determined that our decision *Crocker v. United States*, 125 F.3d 1475 (Fed.Cir.1997), barred Vereda's claim because *Crocker* "clearly prohibits [the Court of Federal Claims] from hearing claims for illegal exactions in forfeiture cases based upon failure of notice to the injured party." *Id.* at 15–16. In affirming its decision not to dismiss Vereda's taking

claim, the court relied on our decision in *Shelden. Vereda II*, 46 Fed.Cl. at 18. The court noted that Vereda's taking claim was "unrelated to the adequacy of notice of the forfeiture action," but instead was based on Vereda's alleged property rights, through its mortgage interest, in the airplane. *Id.* at 16. The court concluded that the case was governed by *Shelden*, 7 F.3d at 1029–31, where this court allowed an innocent owner of a mortgage interest in property forfeited pursuant to 18 U.S.C. § 1963 (1982) to pursue a taking claim in the United States Claims Court, the predecessor to the Court of Federal Claims. *Vereda II*, 46 Fed.Cl. at 18–19. However, the Court of Federal Claims noted that "there is a substantial ground for difference of opinion about the implications of the *Crocker II* opinion and the *Shelden* opinion, such that an interlocutory appeal pursuant to 28 U.S.C. § 1292(d)(2) may be appropriate." *Id.* at 19.

The government filed a motion in the Court of Federal Claims on November 16, 1999, asking for a certification for interlocutory appeal and for a stay of proceedings. Vereda did not oppose the motion. The Court of Federal Claims granted the motion, and certified the question set forth above. *Vereda III*, 46 Fed. Cl. at 570–71. The court determined that this question of law was controlling since the taking claim was the only claim remaining in the case. *Id.* at 570. The court further determined that there was a substantial difference of opinion regarding its jurisdiction over Vereda's taking claim and that an immediate appeal on the issue would "materially

---

5. The Eighth Amendment provides in relevant part as follows: "nor excessive fine imposed...." U.S. Const. amend. VIII, cl. 2.

6. Vereda based its illegal exaction claim on the contention that the seizure and forfeiture

were in contravention of the provisions of 21 U.S.C. § 881. In particular, Vereda alleged that DEA had failed to provide Aeroexpreso and Vereda timely notice of the seizure and forfeiture. *Vereda I*, 41 Fed.Cl. at 502–04.

advance the ultimate termination of the litigation." *Id.* at 570–71.

We granted the government permission to appeal the certified order. In so doing, we agreed with the Court of Federal Claims that there is "substantial ground for difference of opinion ... regarding the implications of *Crocker* and *Shelden,*" and we noted that because "the Fifth Amendment taking claim is the sole remaining claim[,] ... if this court determines that the Court of Federal Claims lacks jurisdiction, then the entire lawsuit will be dismissed." *Vereda IV* at \*1–2. We have jurisdiction over the government's appeal pursuant to 28 U.S.C. § 1292(d)(2).

## DISCUSSION

██ We review a decision by the Court of Federal Claims regarding its jurisdiction without deference because jurisdiction is a question of law. *Tippett v. United States,* 185 F.3d 1250, 1254 (Fed.Cir.1999).

## I.

Vereda bases its taking claim on a challenge to the substantive validity of the forfeiture of its interest in the airplane. Vereda asserts that it is innocent of any wrongdoing. Accordingly, it argues, it is entitled to the benefit of the provisions of 21 U.S.C. §§ 881(a)(4)(C) and 881(a)(6), which, during the relevant time, provided that a party who was innocent of wrongdoing would not have its interest in property forfeited.[7] *See Austin v. United States,* 509 U.S. 602, 605 n. 1, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (noting the innocent owner exception to a forfeiture under § 881(a)(4)(C)). Vereda also asserts that DEA has not substantiated its allegations of the airplane's "guilt," allegations, Vereda contends, which form the basis of the *in rem* administrative forfeiture.[8]

██ We reject Vereda's challenge to the forfeiture in this case. We do so because we conclude that the Court of Federal

---

**7.** At the time of the forfeiture in question, § 881(a)(4)(C) provided that "no conveyance shall be forfeited ... to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge, consent, or willful blindness of the owner." Section 881(a)(6) was of a like tenor. It provided that "no property shall be forfeited ... to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." 21 U.S.C. § 881(a)(6).

The innocent owner provisions of 21 U.S.C. §§ 881(a)(4)(C) and 881(a)(6) were repealed by CAFRA, and replaced with provisions which altered the innocent owner defense. *See* Pub.L. No. 106–185, § 2(c), 114 Stat. at 210 and § 2(a), 114 Stat. at 204. The innocent owner defense now is codified at 18 U.S.C. § 983(d) (2001).

**8.** For purposes of its taking claim, Vereda does not contend that the seizure and forfei-

ture of the airplane were procedurally defective. In any event, *Crocker* bars Vereda from challenging the procedural validity of the *in rem* administrative forfeiture of the airplane in the Court of Federal Claims. In *Crocker,* this court considered a claim seeking compensation for a seizure and forfeiture under 21 U.S.C. § 881(a)(6) because of an alleged violation of the claimant's statutory and procedural rights. The plaintiff in *Crocker* challenged the procedural propriety of the forfeiture of her property "either as a violation of statutory or procedural rights, or as an unlawful exaction." 125 F.3d at 1476. We held that the Court of Federal Claims did not have jurisdiction to hear that challenge to the forfeiture. *Id.* We also held that the Court of Federal Claims lacked the general federal question jurisdiction of the district courts, which would have allowed it to review the agency's actions and to grant relief pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701–706. *Id.*

Claims does not have authority to determine whether the airplane as a whole, which includes Vereda's interest in the airplane, met the criteria for forfeiture set forth in 21 U.S.C. §§ 881(a)(4) and 881(a)(6).

The Court of Federal Claims lacks jurisdiction in this matter because the relevant statutes provide for a comprehensive administrative and judicial system to review the *in rem* administrative forfeiture of property seized pursuant to 21 U.S.C. § 881. When such a "specific and comprehensive scheme for administrative and judicial review" is provided by Congress, the Court of Federal Claims' Tucker Act jurisdiction over the subject matter covered by the scheme is preempted. *St. Vincent's Med. Ctr. v. United States,* 32 F.3d 548, 549–50 (Fed.Cir.1994); *see also United States v. Fausto,* 484 U.S. 439, 454–55, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988); *Appalachian Reg'l Healthcare, Inc. v. United States,* 999 F.2d 1573, 1577 (Fed.Cir.1993). The statutory scheme established by the Controlled Substances Act provides complete administrative review by DEA and judicial review in district court of (i) the merits of a seizure and forfeiture of property initiated under 21 U.S.C. § 881 and (ii) any related due process claims.

In short, Congress created a statutory scheme that provides a claimant such as Vereda with the ability to challenge the merits of an *in rem* forfeiture, both administratively and before a district court. This statutory scheme evinces Congress' intent to preempt any Tucker Act jurisdiction over a money claim that challenges the propriety of an *in rem* administrative forfeiture of property seized under 21 U.S.C. § 881. *See, e.g., St. Vincent's,* 32 F.3d at 549–50 (noting that the Medicare Act contained such a "comprehensive scheme for administrative and judicial review of Medicare reimbursement claims" that the Court of Federal Claims' Tucker Act jurisdiction over such a claim had been preempted).

■■■ The trial court's exercise of jurisdiction over Vereda's substantive claims also is barred by the effect of 19 U.S.C. § 1609(b). Section 1609(b) gives a declaration of forfeiture "the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States." The Court of Federal Claims "does not have jurisdiction to review the decisions of district courts." *Joshua v. United States,* 17 F.3d 378, 380 (Fed.Cir.1994). This means that the Court of Federal Claims cannot entertain a taking claim that requires the court to "scrutinize the actions of" another tribunal. *Allustiarte v. United States,* 256 F.3d 1349, 1352 (Fed.Cir.2001) (holding that the Court of Federal Claims lacked jurisdiction to adjudicate a taking claim based on "an allegedly improper action by a bankruptcy trustee that was approved by a Ninth Circuit bankruptcy court"). Since, as a matter of law, the declaration of forfeiture of the airplane under 19 U.S.C. § 1609(b) had the same force and effect as a district court judgment, the Court of Federal Claims cannot consider Vereda's arguments as to the substantive decisions underlying the *in rem* administrative forfeiture. Just as in *Allustiarte,* 256 F.3d at 1352, where the Court of Federal Claims did not have jurisdiction over a taking claim requiring a determination of whether a bankruptcy judgment was correctly decided, here the Court of Federal Claims does not have jurisdiction over Vereda's taking claim requiring a determination of the correctness of the administrative forfeiture.

## II.

Vereda contends that our decision in *Shelden* supports jurisdiction in the Court of Federal Claims in this case. *Shelden* involved a taking claim, brought in the United States Claims Court, regarding a mortgage interest the Sheldens held in real property that was subject to an *in personam* forfeiture pursuant to 18 U.S.C. § 1963(a) (1982). The forfeiture of the property resulted from the mortgagor's conviction on Racketeer Influenced and Corrupt Organizations Act ("RICO") charges. *Shelden,* 7 F.3d at 1024–26. Section 1963(a) requires the forfeiture of a party's interest in property acquired or maintained in violation of RICO, upon a finding that the party violated the RICO statute. *Shelden,* 7 F.3d at 1027 n. 3. In *Shelden,* we held that the forfeiture, while only forfeiting the mortgagor's interest in the property, *de facto* destroyed the value of the Sheldens' mortgage and that they had, therefore, suffered a compensable taking. *Id.* at 1027–28.

▉▉▉ Vereda's reliance on *Shelden* is misplaced. *Shelden* involved an *in personam* forfeiture accompanying a third-party criminal conviction. An *in personam* forfeiture results from a proceeding against the property owner, not the property itself, and is meant to punish the property owner for criminal conduct. *United States v. Bajakajian,* 524 U.S. 321, 331–32, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). However, in an *in rem* forfeiture, the type of forfeiture at issue here, the guilt or innocence of the property owner is irrelevant in view of the fact that the action resulting in forfeiture is "directed against [the] 'guilty property,' rather than against the offender himself." *Bajakajian,* 524 U.S. at 330, 118 S.Ct. 2028.

The Sheldens were an innocent party, like Vereda claims to be in this case. However, unlike Vereda, because they were deprived of a property interest as the result of an *in personam* forfeiture against the owner under the RICO statute, there was not available to them a "specific and comprehensive scheme for administrative and judicial review" of their third-party interest in the property. *St. Vincent's Med. Ctr.,* 32 F.3d at 549–50. The Sheldens were not a party to the *in personam* forfeiture proceedings against the owner of the property because the forfeiture was carried out as part of the criminal proceedings against the owner. Thus, although they maintained an interest in the property, there was no procedure by which they, as third parties, could intervene in the forfeiture proceedings. In this case, however, a "specific and comprehensive scheme for administrative and judicial review" of the forfeiture of the airplane was available under the Controlled Substances Act. That statute invites "[a]ny person claiming such [property]" to file a claim and join the forfeiture proceeding against the property. 19 U.S.C. § 1608. It is for that reason that the Court of Federal Claims is deprived of jurisdiction in this case. In short, *Shelden* is inapposite.

## CONCLUSION

For the foregoing reasons, we answer in the negative the question "[w]hether a mortgagee may assert a viable Fifth Amendment taking claim in the United States Court of Federal Claims following the government's *in rem* administrative forfeiture of the property securing the mortgage after proceedings in the United States District Court." Consequently, we reverse the order of the Court of Federal Claims denying the government's motion to dismiss for lack of jurisdiction and remand the case to the Court of Federal

Claims. In accordance with this opinion, the court is directed to enter judgment dismissing Vereda's complaint.

*REVERSED and REMANDED.*

No costs.